IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NITTERHOUSE CONCRETE PRODUCTS, INC. and NITTERHOUSE MASONRY PRODUCTS, LLC, :<br>Plaintiffs : <br> : <br> vs. : <br> : <br>GLASS MOLDERS, POTTERY, PLASTICS & ALLIED WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, and its LOCAL UNION 201B, : <br>Defendants : | CIVIL NO. 1:CV-15-2154 <br><br>(Judge Caldwell) |

*M E M O R A N D U M*

I.  *Introduction*

Plaintiffs are Nitterhouse Concrete Products, Inc. ("NCP") and Nitterhouse Masonry Products, LLC ("NMP"). Defendants are the Glass, Molders, Pottery, Plastics & Allied Workers International Union, AFL-CIO-CLC and its Local Union 201B ("GMP").

Plaintiffs allege that they each had a collective-bargaining agreement ("CBA") with the union defendants and that Defendants breached the agreements by failing to indemnify or hold Plaintiffs harmless from Plaintiffs' withdrawal liability under the "GMP and Employers Pension Plan" (the "Plan"). Plaintiffs make a breach-of-contract claim and also seek a declaratory judgment that Defendants are obligated to indemnify or hold Plaintiffs harmless from Plaintiffs' withdrawal liability under the Plan.

Defendants have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The sole argument made in the dismissal motion is that Defendants are not liable to indemnify Plaintiffs because any duty to indemnify did not survive the expiration of the CBAs.

II.  *Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted).  The court can also consider documents attached to the complaint. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006)

III.  *Background*

Plaintiffs allege as follows.  Plaintiffs are Pennsylvania-based corporations, with their principal places of business in Chambersburg, Pennsylvania.  (Doc. 1, Comp. ¶¶ 1-2). NCP and NMP are engaged in selling pre-cast concrete products and concrete masonry products, respectively.  (*Id.* ¶ 6).

NCP and Defendants entered into a collective-bargaining agreement, effective from February 16, 2013, through February 15, 2014. (*Id.* ¶ 7, CBA attached as Ex. 1). NMP and Defendants entered into a collective-bargaining agreement, effective from February 16, 2013, through February 15, 2014. (*Id.* ¶ 8, CBA attached as Ex. 2).

Article XVII of the CBAs deals with workers' pensions. Under that Article, Section 17.03 of both CBAs required Plaintiffs,as the "Compnay," to make contributions to the Pension Plan. (*Id.* ¶¶ 9-13). Section 17.07 provides as follows:

> **Section 17.07 - Company Indemnification**
>
> The Company shall have no liability for the payment of benefits other than to make contributions to the Plan as above required.
>
> The parties hereto recognize that, as between the Union and the Company, the operation of the Pension is within the control of the Union. Therefore, the Union specifically agrees that the structure and operation of the Pension Plan shall comply with all laws applicable to it, including by way of example, and not limitation, the Employee Retirement Income Security Act of 1974, as amended from time to time, and further agrees to indemnify and save harmless the Company from any claim or liability which may arise by reason of the existence of the Plan.

(*Id.* ¶ 14, and CBAs attached as Exs. 1 and 2).

On February 10, 2014, Defendants sent NCP a "Disclaimer of Interest letter," stating that upon expiration of NCP's CBA on February 15, 2014, Defendants were "disclaiming any interest in representing the employees of NCP and was ceasing representation of the employees of NCP as of February 15, 2014." (*Id.* ¶ 15, and letter attached as Ex. 3). On February 10, 2014, Defendants "sent NMP a Disclaimer of Interest letter," stating that upon expiration of NMP's CBA on February 15, 2014, Defendant was "disclaiming any interest in representing the employees of NMP and was ceasing representation of the employees of NMP as of February 15, 2014." (*Id.* ¶ 16, and letter attached as Ex. 4). Both Plaintiffs have continued operations since February 15,

2014, and allege they were "effectively forced by [Defendants] to cease making contributions to the [Plan] as a result of" Defendants' decision no longer to represent the employees or to enter into another collective-bargaining agreement with Plaintiffs. (*Id.* ¶ 17).

Some eighteen months later, on August 18, 2015, the Plan sent letters to each Plaintiff, notifying them of the assessment of withdrawal liability owing to the Plan. (*Id.* ¶¶ 18-19). The Plan claimed Plaintiffs were responsible for withdrawal liability under Section 4201 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1381. (*Id.* ¶ 20). The Plan assessed NCP's withdrawal liability at $430,291 and NMP's withdrawal liability at $250,407, payable in a lump sum or quarterly. (*Id.* ¶¶ 21-22).

On September 24, 2015, NCP made its first quarterly payment to the Plan of $12,900.27. (*Id.* ¶ 24). On September 24, 2015, NMP made its first quarterly payment to the Plan of $9,806.70. (*Id.* ¶ 25). On October 13, 2015, Plaintiffs sent a letter to Defendants demanding reimbursements of these payments, on the ground that the CBAs required Defendants to indemnify Plaintiff on them. (*Id.* ¶ 30). Defendants have refused to acknowledge their obligations to indemnify Plaintiffs. (*Id.* ¶ 32).

IV.   *Discussion*

Collective-bargaining agreements are interpreted "according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M&G Polymers USA, LLC v. Tackett*, ___ U.S. ___, ___, 135 S. Ct. 926,

933, 190 L.Ed.2d 809 (2015). One of those principles is "that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.'" *Id.* at ___, 135 S.Ct. at 937 (quoting *Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 207, 111 S.Ct. 2215, 2226, 115 L.Ed.2d 177 (1991)).

In the instant case, Defendants rely on this principle in moving to dismiss the complaint. They maintain that when the CBAs expired on February 15, 2014, so did any duty they had to indemnify Plaintiffs imposed by the CBAs. They also rely on the CBAs' durational clause. That clause, Section 20.01, provided that the CBA would be effective from February 16, 2013, through February 15, 2014, and automatically renewed from year to year unless certain events happened that are not relevant here. (Doc. 1 Compl., Ex. 1 and 2).[1] It contained no language allowing any provision of the agreement to remain in force after termination of the CBA. Defendants maintain that Plaintiffs must be able "'to point to language that could reasonably be interpreted as constituting a promise,'" (quoting *Joyce v. Curtiss-Wright Corp.*, 171 F.3d 130, 134 (2d Cir. 1999)), that Defendants' "indemnification obligation would remain in effect after the CBAs expired to require indemnification for liabilities that did not arise until after the Agreements had expired." (Doc. 15, ECF p. 8, Defs.' Supporting Brief).

Defendants also rely on the principle of contract interpretation that indemnity clauses must be strictly construed, citing *Valhal Corp. v. Sullivan Associates,*

---

[1] As noted, the CBAs are attached to the complaint so Defendants can rely on this clause.

*Inc.*, 44 F.3d 195, 202 (3d Cir. 1995)(applying Pennsylvania law).  In their view, refusing to interpret the indemnity clause to allow its enforcement after the contract has expired is in accord with this principle.

We disagree.  As Plaintiffs argue, the language of the indemnification clause, in referring to "*any* claim or liability which may arise *by reason of the existence of the Plan*," contemplates liability arising in connection with the Plan, not just the CBAs.  As the instant case shows, such liability may arise after the expiration of the collective-bargaining agreement by way of withdrawal liability.  Withdrawal liability could only occur after the CBAs expired, eliminating Plaintiffs' obligation to the Plan.[2]  Further, Defendants' reliance on *Valhal Corp.* is misplaced as the argument here is not about the scope of the indemnity clause, but whether it can be enforced after expiration of the CBAs.

In the current posture of the case, given our standard of review on a motion to dismiss, we will deny the motion.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: March 3, 2016

---

[2] Withdrawal liability is statutorily imposed so that the withdrawing employer pays its share of the Plan's unfunded liability.  *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 194 (3d Cir. 2009). Parenthetically, a union's agreement to indemnify an employer for its withdrawal liability does not violate public policy.  *Id.*